Bissell, J.,
delivered the opinion of the court.
The terms of this contract are again submitted to this court for consideration and construction. The parties have changed, the character of the suit has been altered, but the end sought is exactly like that which was striven after in the suit of White v. The Canal Company. We do not avoid the labor because of the difficulty of the proposition, nor because our conclusion may not be determinative of the question. We are somewhat inclined to criticise counsel, who possibly exercise nothing more than their statutory right, when they bring causes here of which the supreme court has the final determination. It tends to work a little injustice and hardship on other litigants, and imposes on this court an unusual and an undue proportion of the appellate work of the state. Under these circumstances, we may be quite excused if we confine our decision of such cases within those limits which serve to express the results at which we have arrived, and suggest, rather than elaborate, the reasons on which our decision-is based. We do not intend to evade or attempt to escape a responsibility correctly laid on us to decide any questions, however difficult they may be, but we incline to the opinion our full duty is discharged if 'we go no farther than may be necessary to indicate the results. This proceeding will relieve the other tribunal of the labor which might be involved in any possible review of our decision, and leave that learned and distinguished court entirely free to formulate its own conclusions. They will undoubtedly be able to *254 lay more firmly the foundations of the law and assign better and more satisfactory reasons with which to support the judgment wherever thejr concur.
The reversal of this judgment is put on the naked ground that no case for mandamus is made by the proof. It is barely possible enough is alleged in the petition, had it been adequately supported, to warrant these proceedings. The course of the trial, the testimony offered, the lines on which the battle was fought, and the judgment of the court, all warrant us to reach the conclusion the sole purpose and object of the suit was to obtain a judicial construction of the contract and an establishment of a perpetual right in Eli Allen and his grantees to water from the Canal Company, and not to procure temporary relief from a breach of the contract on the part of the corporation. We are very much embarrassed in this discussion, because of the apparent difference between some decisions rendered by this court and opinions promulgated by the other. We are likewise hampered by the very great difficulty which we experience in concluding what rule the supreme court has declared in regard to this question. As we understand the adjudications, our decisions are not in conflict with those of the supreme court, and yet we find in the latter some cases which, without analysis and comparison, would seem to be at variance with our conclusions. The limitations which that court has placed on some of its statements of the doctrine lead us, however, to believe that we are in harmony, as we are bound to be, with that court in our statement of the law. Mandamus will not lie to enforce private rights resting on contract, unless the case be brought within the tolerably well settled rules respecting this extraordinary writ. The legal right to the writ must be clearly established. The courts will not interfere wherever it is apparent the interests of third persons, who are not before the court, are necessarily involved. This subject received quite elaborate consideration at the hands of the learned president judge of this court, as will appear from two opin *255 ions which were written by him, in Ditch Co. v. Maxwell, 4 Colo. App. 477; Bright v. Ditch Co., 3 Colo. App. 170.
One of these cases came up on demurrer, but the other undoubtedly decided that conflicting water rights, or the duties and obligations of a carrier of water, and its consumers, could not be legitimately determined in a mandamus proceeding. We see no occasion to change our conclusion in this particular, unless we are otherwise advised by the supreme court, nor do we think it controlled by the opinion of that court on similar questions. The matter has come before that learned court on several different occasions. The first declaration on the subject called to our attention is found in Golden Canal Co. v. Bright, 8 Colo. 144. It is followed by Wheeler v. The Northern Colo. Irr. Co., 10 Colo. 582; Townsend v. Fulton Irrigating Co., 17 Colo. 142; Combs v. Agricultural Ditch Co., 17 Colo. 146.
These are the only cases cited, or which we have observed bearing on this question. The first case was quite an elaborate consideration of the question, and, speaking by one of its then judges, the court apparently held that mandamus would lie to compel the delivery of water to which a party was entitled by virtue of an established contract, where there was no controversy respecting the contract, and the contest was based on the existence of other sources of supply, a denial of a tender, and a failure to comply with the rules and regulations of the company. We are not disposed to contest that decision, or in any wise criticise it. Wherever there is no question about the contract and the duty, except what may come from the failure of the petitioner to comply with the regulations of the company, or to prove irremediable damage in case the corporation fails to discharge its obligations, we should not hesitate either to follow that court in its conclusion or to express our views in the same direction if it was an original proposition. The Wheeler Case pursued the same general line of argument, and is based on somewhat similar conditions. There the right to the water was conceded. The concession, however, was coupled with the limi *256 tation that the user was hound to pay a certain fee. The contest between the parties was as to what should be paid to entitle the user to his water. Under such circumstances, mandamus was held to be a proper remedy, because it was made to appear that without the writ the whole crop would be lost and the user would be remediless. The court was not in entire harmony on all questions involved, though the one under consideration seems not to have been in dispute. This case was followed by those in the 17 Colorado. I conceive these decisions to be in harmony, though a casual examination would possibly lead to a different conclusion. The declaration in the Combs Case is “ the right of mandamus has been held to be an appropriate remedy to compel the delivery of water for purposes of irrigation.” Taken by itself, it seems to be a broad announcement of the rule that mandamus is always an appropriate remedy in cases of this description. We do not understand it to have been the purpose of the writer of the opinion, or of the court,, to lay down a general rule to which there were no exceptions, nor to announce generally that in irrigation cases mandamus is an appropriate or proper remedy. That the remedy is both appropriate and proper in certain classes of cases has already been established, and this general statement must be taken in view of the cases wherein the law Avas thus laid down. The other case, to- our mind, indicates what we believe to be true, that there are limitations on the right to resort to this procedure to establish the right to water. In the Townsend Case, the court says: “ It is scarcely necessary to say that the Avrit of mandamus is not an appropriate remedy to secure a perpetual right to the use of water for irrigation.” Of course, there was no attempt to express the limitations on the right to the writ, nor has there been any ease in which the whole subject has undergone consideration to the extent necessary to enable us to determine what limits that learned court Avould place on the right to the writ. Being thus Avithout the aid and benefit of any specific declaration by that court on the subject, we must decide the case according to our views of what the law- *257 is in such cases. As we have before intimated, we readily concede that in certain classes of cases parties may file their petition for a writ of mandamus to compel a carrier to deliver water for a particular and specific season, where they would otherwise be remediless, if the right is not contested except for some collateral reason, and where the interests of third parties are not involved. According to the statement of facts preceding this opinion, the present litigation presents no such question. It is really an attempt on the part of the petitioner to obtain an adjudication as to a perpetual water right for a particular piece of land. It does not concern the delivery of water for the year 1894, nor for any other particular year, nor was the proceeding instituted in order to protect a crop then growing on the land, and being raised bj'- the petitioner. The land is said to be under cultivation. This is all that is said about it. We do not know what, if any, crops were growing on it that year, nor whether they would be destroj’ed if the wrater was not delivered, nor was the evidence directed to the proof of the damages wdrich would flow from the failure to deliver water in the particular season. As we view it, there was no evidence that a crop would be lost if the water was not delivered, nor that the petitioner would be damaged by the failure. All the testimony was directed to the establishment of Eli Allen’s perpetual right to what is called “schedule water,” by virtue of having been a party to the Bomberger contract. The defense was rested principally on two propositions ; the one being an abandonment by Eli Allen of the right, if he ever had anjr, through his use of water furnished by the Juchem and Reno consolidated ditch from Clear creek itself through the Eureka canal, and the other the loss of this right by virtue of this user of the water through the Eureka ditch, and the sale and the use of water carried by the High Line canal, or as it was formerly called, the Old Arapahoe ditch, to’-persons who thereby became invested with a title and a right to the water. In realitj1’, there was nothing else litigated, and nothing else towards which any proof was offered. There are some questions which are *258 tolerably well settled in this state. One is that a corporation owning and controlling a ditch and furnishing water to consumers has no absolute title to the water, nor is a title acquired except as the diversion by the company may unite with the consumption by the user, so as to make a complete appropriation. With this fundamental proposition as a basis, it is exceedingly clear that the plaintiffs in error acquired no title to the water carried by the ditch, save to the extent to which the use had combined with the diversion and made a complete appropriation. If it be true, as the evidence would seem to show, that all the water which had been diverted in that ditch had been put to agricultural uses by consumers, there must have been a complete appropriation of the full amount of water carried. The relative rights of users of water furnished by a corporation which transports it to the land on which it is applied have not yet been definitely decided in this state. It has not yet been determined what acts on the part of one of those users will, as between him and the corporation and his coconsumers, amount to an abandonment of water to which title may have been acquired, so that he may not be reinvested with the right by a subsequent attempt to continue its application. In other words, it has not yet been settled whether a party may for a period intermit its use, and the transportation company make title to a subsequent purchaser who makes a constitutional application of the water, and thus divest the original claimant and purchaser of whatever title he may have enjoyed. Since this very troublesome question has not been settled, we do not deem it wise to enter upon its discussion, or formulate or even intimate what our views may he on the subject. That under different conditions, and in a different sort of a suit, the question could be raised and discussed, and a decision compelled as between these parties, there is no doubt. If this was any other than a mandamus proceeding, we should he forced to construe the contract and determine what rights accrued to Eli Allen thereunder, and whether those rights were still preserved to his grantees and could be enforced by *259 them. We do not believe they are properly presented in the present litigation. We have concluded the present case is not a.proper one for mandamus and that the petitioner was not entitled on this hearing, and on the proof which he offered, without more, to a judgment awarding him a writ which should compel the delivery of water.
The judgment itself is, in our opinion, erroneous, as it virtually amounts to an adjudication respecting a perpetual water light and was not' limited to the delivery of twenty-five inches of water for any one particular year. Had the judgment been thus limited, possibly error would not have been prosecuted, though we believe it would have made no difference, because the parties are evidently desirous to obtain a judicial construction of the contract. Rights of third persons were shown to be involved, and those persons were not before the court, and a judgment respecting Eli Allen’s rights, or those of his grantees, might operate to their prejudice. It must be conceded no question was made in regard to parties, nor was there any proof offered by the company to show that all the water which they had diverted and transported had been bought and delivered to consumers. It is quite possible that to make this objection available for the purposes of reversal some objection should have been made and some proof offered on this question. The reversal is not put on this basis, but it is offered as a suggestion to illustrate the difficulties which might intervene if in this sort of a proceeding the court should undertake to adjudicate the rights conferred by the Bomberger contract.
We do not believe the evidence warranted the granting of the peremptory writ, or the entry of the judgment which is before us. On the proof, the petition should have been dismissed and the party remitted to the settlement of their claims in a different form of action. It is quite possible, if it became a controversy between the defendants in error, the Canal Company, and others, in respect to the enforcement of his right to twenty-five inches of water, an action must be brought on the statute to determine this question. This *260 was the intimation of the supreme court in the White Case before referred to. We do not pass on it or express our concurrence, because we are not clear what statutory, provision was referred to. We simply hold that mandamus was not an appropriate remedy to enforce the case made by the proof.
For the error committed by the court in entering its judgment, it will be reversed.

Reversed.